Colorado Court of Appeals Opinions || November 5, 2015


Colorado Court of Appeals -- November 5, 2015
2015 COA 162. No. 14CA1869. Colorado Union of Taxpayers Foundation v. City of Aspen.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 162

 
 



 Court of Appeals No. 14CA1869
 Pitkin County District Court No. 12CV224
 Honorable John F. Neiley, Judge


 Colorado Union of Taxpayers Foundation, a Colorado non-profit corporation,

 Plaintiff-Appellant,

 v.

 City of Aspen; Mick Ireland, Adam Frish, Torre, Steve Skadron, and Derek Johnson, in their official capacities as members of the Aspen City Council,

 Defendants-Appellees.


 JUDGMENT AFFIRMED

 Division VII
 Opinion by JUDGE MILLER
 Sternberg* and Rothenberg*, JJ., concur

 Announced November 5, 2015


 Jeffrey W. McCoy, Steven J. Lechner, Lakewood, Colorado, for Plaintiff-Appellant

 James R. True, City Attorney, Deborah Quinn, Assistant City Attorney, Aspen, Colorado, for Defendants-Appellees

 *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, Â§ 5(3), and Â§ 24-51-1105, C.R.S. 2015.

 
 Â¶1Â Â Â Â Â Â Â Â  Plaintiff, Colorado Union of Taxpayers Foundation, a Colorado non-profit corporation (the Foundation), appeals the district courtâs order holding that the City of Aspenâs ordinance imposing a twenty cent âwaste reduction feeâ on paper bags did not violate the Taxpayerâs Bill of Rights (TABOR), Colo. Const. art. X, Â§ 20. The district court granted summary judgment on behalf of defendants, the City of Aspen and Mick Ireland, Adam Frish, Torre,[1] Steve Skadron, and Derek Johnson, in their official capacities as members of the Aspen City Council. We affirm.

 I. Background

 Â¶2Â Â Â Â Â Â Â Â  The following facts are undisputed.

 Â¶3Â Â Â Â Â Â Â Â  In 2011, the City adopted Aspen Ordinance 24 (Oct. 11, 2011). The ordinance prohibited grocers from providing customers with disposable plastic bags, Aspen City Code 13.24.020(a), and required grocers to charge customers a âwaste reduction feeâ of $0.20 for each disposable paper bag provided, Code 13.24.030(a). For the first twelve months the ordinance was in effect, grocers were permitted to retain twenty-five percent of each fee collected, to totalÂ no more than $1000 per month. Code 13.24.050(a). Thereafter, grocers are permitted to retain a total of no more than $100 per month. Id. The retained amount may be used by grocers to â(1) [p]rovide educational information about the Waste Reduction Fee to customers; (2) [t]rain staff in the implementation and administration of the fee; and (3) [i]mprove or alter infrastructure to allow for the implementation, collection[,] and administration of the fee.â Code 13.24.050(b). The remaining fees collected by grocers are remitted upon payment with the businessâs city sales tax payment to the Cityâs Finance Department. Code 13.24.050(d)-(e). Fees remitted are deposited into a special City âWaste Reduction and Recycling Account.â Code 13.24.050(d). The Cityâs Environmental Health Department administers the fee. Code 13.24.050(f).

 Â¶4Â Â Â Â Â Â Â Â  The funds deposited in the account are used for the following projects, in the following order of priorities:

 (1) Campaigns conducted by the City of Aspen . . . to:

 (A) Provide reusable carryout bags to residents and visitors; andÂ 

 (B) Educate residents, businesses, and visitors about the impact of trash on the Cityâs environmental health, the importance of reducing the number of disposable carryout bags entering the waste stream, and the impact of disposable carryout bags on the waterways and the environment.

 (2) Ongoing campaigns conducted by the City of Aspen to:

 (A) Provide reusable bags to both residents and visitors; and

 (B) Create public educational campaigns to raise awareness about waste reduction and recycling;

 (C) Funding programs and infrastructure that allows [sic] the Aspen community to reduce waste and recycle.

 (D) Purchasing and installing equipment designed to minimize trash pollution, including[] recycling containers[] and waste receptacles;

 (E) Funding cmmunity cleanup events and other activities that reduce trash;

 (F) Maintaining a public website that educates residents on the progress of waste reduction efforts; and

 (G) Paying for the administration of this program.

 Code 13.24.050(g). The fees may not be used to supplant funds appropriated as part of an approved annual budget, nor do any feesÂ revert to the general fund. They remain continually available for the uses and purposes set forth above. Code 13.24.050(h)-(i).

 Â¶5Â Â Â Â Â Â Â Â  The Foundation is a nonprofit organization formed to âeducate the public as to the dangers of excessive taxation, regulation, and government spending.â In August 2012, the Foundation sued defendants, alleging that the enactment of the ordinance without first obtaining voter approval violated TABOR.

 Â¶6Â Â Â Â Â Â Â Â  After hearing oral argument from the parties on their cross-motions for summary judgment, the district court concluded that the ordinance was neither subject to nor unconstitutional under TABOR.

 II. Standard of Review

 Â¶7Â Â Â Â Â Â Â Â  We review a district courtâs order granting summary judgment de novo. See, e.g., Westin Operator, LLC v. Groh, 2015 CO 25, Â¶19. âSummary judgment is appropriate only if âthe pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.ââ Id. (quoting C.R.C.P. 56(c)).

 Â¶8Â Â Â Â Â Â Â Â  The district court imposed a burden on the Foundation of establishing that the ordinance violated TABOR beyond a reasonable doubt, and it concluded that the Foundation failed to satisfy that burden. Several decisions of the supreme court ruling on TABOR challenges to state and local legislation have articulated that burden without discussion. See, e.g., Huber v. Colo. Mining Assân, 264 P.3d 884, 889 (Colo. 2011) (state legislation); Barber v. Ritter, 196 P.3d 238, 247 (Colo. 2008) (same); Zaner v. City of Brighton, 917 P.2d 280, 286 (Colo. 1996) (municipal). The Foundation urges, for a number of reasons, that the district court erred in applying the beyond a reasonable doubt standard in this case. The City disagrees.

 Â¶9Â Â Â Â Â Â Â Â  We need not and do not resolve this dispute. The Foundation acknowledges that a presumption of validity attaches to the ordinance. For the reasons discussed below, we conclude, without regard to the beyond a reasonable doubt standard, that the Foundation failed to overcome this presumption.

 III. TABOR: Tax or Fee

 Â¶10Â Â Â Â Â Â Â Â  The Foundation contends the district court erred when it ruled that the ordinance creates a fee, rather than a tax, and therefore is not subject to TABOR. We disagree.

 A. TABOR Background

 Â¶11Â Â Â Â Â Â Â Â  As relevant here, TABOR limits the stateâs ability to levy new taxes or create new debts by requiring voter approval of any new tax, tax rate increase, or tax policy change that could cause a net tax revenue gain to any district. Colo. Const. art. X, Â§ 20(4)(a). A tax is âdesigned to raise revenues to defray the general expenses of government, but [a fee] is a charge imposed upon persons or property for the purpose of defraying the cost of a particular governmental service.â Barber, 196 P.3d at 248. While a tax is subject to the requirements of TABOR, a fee is not. See Bruce v. City of Colorado Springs, 131 P.3d 1187, 1189-90 (Colo. App. 2005). Where multiple interpretations of TABOR are equally supported by the text, a court should choose that interpretation which would create the greatest restraint on the growth of government. Nicholl v. E-470 Pub. Highway Auth., 896 P.2d 859, 867 (Colo. 1995); TABOR Found. v. Colo. Bridge Enter., 2014 COA 106, Â¶19. However, thatÂ principle applies only when the text equally supports multiple interpretations. Barber, 196 P.3d at 247-48; TABOR Found., Â¶19.

 B. Tax or Fee Analysis

 Â¶12Â Â Â Â Â Â Â Â  The âdispositive criteri[on]â in deciding whether a charge is a fee or a tax is the primary or dominant purpose of the financial imposition at the time of the enactment of the legislation. TABOR Found., Â¶22 (emphasis omitted) (quoting Barber, 196 P.3d at 248). We examine several factors to guide us:

 (1) The language of the enabling statute and whether it indicates that the primary purpose is to raise revenue for general spending or to finance a particular purpose.

 (2) The primary or principal purpose for which the money is raised, not the manner in which it is ultimately spent.

 (3) Whether the primary purpose of the charge is to finance or defray the cost of services provided to those who must pay it.

 Id. at Â¶Â¶22-25. âAny fee amount must be reasonably related to the overall cost of the service; however, mathematical exactitude is notÂ required.â Id. at Â¶26 (citing Bloom v. City of Fort Collins, 784 P.2d 304, 308 (Colo. 1989)).

 C. Application

 1. Primary Purpose of the Charge

 Â¶13Â Â Â Â Â Â Â Â  The primary purpose of the ordinance is to reduce waste. The top priority for the use of funds collected from the waste reduction fee is to provide reusable bags to both residents and visitors; it is the first priority listed and the only one listed as both an immediate and ongoing priority. Code 13.24.050(g)(1)(A), (2)(A). The waste reduction fee provides a direct benefit to those paying the charge by making reusable bags available to them. We also note that the payors of the waste reduction fee each receive a disposable paper bag for their use. Code 13.24.030(a).

 Â¶14Â Â Â Â Â Â Â Â  The ordinance clearly expresses an intent that the waste reduction fees remitted to the City be used for several other functions reducing the cost to the City of litter cleanup and waste disposal, including education regarding trash and waste management, the funding of programs and the presentation of community events regarding trash and waste management, andÂ outreach through the use of a website to educate the public about these topics. Code 13-24-050(g).

 Â¶15Â Â Â Â Â Â Â Â  Thus, we conclude that the City intended the charge to finance a particular class of services related to the reduction of trash and waste and to fund education about those matters.

 2. Primary Purpose for Raising Revenue

 Â¶16Â Â Â Â Â Â Â Â  The purpose of raising revenue is limited here to providing reusable bags, reducing the cost to the City of litter and waste disposal, and funding programs pertaining to trash and waste reduction. Under the ordinance, any fees remitted do not revert to the general fund. Code 13.24.050(i). The funds remain in the special account established pursuant to the ordinance, and the Cityâs Environmental Health Department administers the use and spending of the fees. Code 13.24.050(d), (f). To date, the cost of the services to be funded by the fee has exceeded the amount of fees collected, and, consequently, there have been no surplus revenues.

 Â¶17Â Â Â Â Â Â Â Â  Thus, we conclude that the waste reduction fee is raised solely for the purposes outlined in the ordinance and not to defray the costs of general City or state expenses. See TABOR Found., Â¶34.

 3. Relationship Between the Charge and Service

 Â¶18Â Â Â Â Â Â Â Â  The third factor we consider is whether the primary purpose of the waste reduction fee is to finance or defray the cost of services to those who are required to pay the charge. Id. at Â¶35. The payor of the waste reduction fee obtains a number of services, including reusable carryout bags, availability of recycling containers and waste receptacles, trash cleanup events, and various waste reduction and recycling educational services.

 Â¶19Â Â Â Â Â Â Â Â  In TABOR Foundation, a division of this court rejected the argument that to be considered a fee, a service must be utilized only by those who pay a charge or by all those who must pay the charge. Id. at Â¶Â¶38-43. The division held that a fee may be charged to persons who may not use the services at all, so long as it is reasonably related to the overall cost of the service and is imposed on those reasonably likely to benefit from or use the service. Id. at Â¶Â¶39-40; see also Bloom, 784 P.2d at 310 (transportation utility fee was a fee and not a tax where the fees collected were used âfor the purpose of maintaining the network of city streets without regard to whether the cityâs expenditures specifically relate[d] to any particular property from which the fees for said purposes wereÂ collectedâ) (citation omitted). Accordingly, the fact that a payor of the waste reduction fee may choose not to take advantage of the reusable carryout bags or the education, community outreach, or other trash and waste reduction efforts that the charge funds does not bar its consideration as a fee.

 Â¶20Â Â Â Â Â Â Â Â  Like the payors of the bridge safety surcharge in TABOR Foundation, every person who pays the waste reduction fee has access to the services funded by the fee. The fact that not everyone paying the fee will choose to receive all services funded by the fee, or that other persons may receive some of those services, does not change the outcome.

 4. Presumption In Favor of Restraint on Government

 Â¶21Â Â Â Â Â Â Â Â  There is a presumption that the court should choose an interpretation of TABOR that would create the greatest restraint on the growth of government. However, that presumption applies only where multiple interpretations of TABOR are equally supported by the text. See Barber, 196 P.3d at 247-48; TABOR Found., Â¶19.

 Â¶22Â Â Â Â Â Â Â Â  The Foundation â the party seeking to invoke this presumption â has the burden of showing that its proposed construction would reasonably restrain the growth of governmentÂ more than the competing interpretations. Bickel v. City of Boulder, 885 P.2d 215, 231 (Colo. 1994).

 Â¶23Â Â Â Â Â Â Â Â  However, we conclude that the text of the ordinance does not equally support the Foundationâs interpretation of the waste reduction fee as a tax. Thus, the presumption does not apply.

 Â¶24Â Â Â Â Â Â Â Â  Even if the presumption applied to this case, two factors lead us to conclude that the Foundation has not carried its burden of showing that invalidating the waste reduction fee would more likely restrain the growth of government. Id. First, the ordinanceâs effect is to reduce waste, litter, and the Cityâs costs of recycling and solid waste disposal. Code 13.24.050(g)(2)(C)-(D). This will reduce the need for government services related to litter cleanup, trash disposal, and recycling. Second, the Foundation has presented no evidence showing that invalidating the ordinance would reduce the growth of government. Accordingly, the Foundation has not established that its interpretation would restrain the growth of government the most.

 Â¶25Â Â Â Â Â Â Â Â  For these reasons, we conclude that the waste reduction fee is a fee and not a tax, that TABOR does not apply to it, and that the Foundation has failed to overcome the presumption of validityÂ attached to the ordinance. Accordingly, the district court did not err when it concluded that the City did not violate TABOR by enacting the ordinance without voter approval.

 IV. Attorney Fees

 Â¶26Â Â Â Â Â Â Â Â  The Foundation requests an award of attorney fees pursuant to the Colorado Constitution article X, section 20(1), which provides for such an award to plaintiffs who successfully bring suit under TABORâs provisions. Because we affirm the district courtâs order concluding TABOR does not apply to the waste reduction fee, we deny the Foundationâs request for attorney fees.

 V. Conclusion

 Â¶27Â Â Â Â Â Â Â Â  The judgment is affirmed.

 JUDGE STERNBERG and JUDGE ROTHENBERG concur.


 Â [1] The record indicates this defendant uses a single name.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || November 5, 2015


Back